# MURRAY PHILLIPS, Appellant, v. NANNIE E. BROUGHTON et al.

### Division Two, March 16, 1917.

1. **EJECTMENT: Former Default Judgment as Bar.** If a former default judgment adjudging plaintiff to be the owner of the land and forever enjoining defendants from asserting any title thereto is valid, it forever precludes defendants from introducing evidence of title in them at any time prior to its rendition.

2. ————: **Former Judgment Void Because of Insufficient Prayer: Sec. 2092, R. S. 1889, and Sec. 2100, R. S. 1909.** If the only relief prayed for in the petition in the former action begun in 1908 was that "the defendants may be summoned to show cause why they should not bring an action to try their alleged claim or title thereto, if any they have," the default judgment adjudging plaintiff to be the owner of the land and forever enjoining defendants from asserting title thereto was void, because the petition clearly shows the action was instituted under Sec. 2092, R. S. 1889, which was repealed by the Act of 1897, Laws 1897, p. 74, and because if the judgment granted other relief than that prayed for it would not be binding upon defaulting defendants, since it is expressly provided by Sec. 2100, R. S. 1909, that in such case the relief granted "shall not be other or greater than that which he [the plaintiff] shall have demanded in the petition."

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard,* Judge.

AFFIRMED.

*Oliver & Oliver* for appellant.

(1) Where a court has jurisdiction over the subject-matter of a suit and of the parties, its judgment is binding on the parties until set aside or annulled by appeal. Such a judgment may be irregular and voidable, but it is not void and cannot be attacked collaterally. Chouteau v. Gibson, 76 Mo. 46; Murphy v. DeFrance, 101 Mo. 151; Hardin v. Lee, 51 Mo. 244; Reed Bros. v. Nicholson, 158 Mo. 631; State v. Wear, 145 Mo. 203; Black on Judgments, sec. 170. (2) This is true, although the defense sought to be set up in the second

suit was not set up in the first suit, provided such defense came within the scope of the inquiry of the first suit. Donnell v. Wright, 147 Mo. 647;. Railroad v. Traube, 59 Mo. 362; Tuttle v. Harritt, 85 N. C. 456; Hotel Assn. v. Parker, 58 Mo. 327; Hamilton v. McLean, 169 Mo. 51; Railroad v. Levy, 17 Mo. App. 507; McCalley v. Wilburn, 77 Ala. 549; 2 Black on Judgments, sec. 697; Freeman on Judgments (4 Ed.), sec. 36. (3) The issues tendered by plaintiff's petition to quiet title in 1908 were: 1st, ownership in fee of the land described; 2nd, possession of the land described by plaintiff; 3rd, assertion that defendants set up some claim to the lands described, adverse to the plaintiff. These were the jurisdictional and issuable averments in the plaintiff's petition. They conform to the requirements of the statute. To these charges no denial was interposed or made by either of the adult defendants. The minor defendant did deny them. The cause was submitted on the testimony offered by the plaintiff, and the court found all of the facts set up in plaintiff's petition to be true. Judgment was entered, quieting the title in the plaintiff, and enjoining and prohibiting the defendants from further asserting claim or title to the lands. The defendants could have denied: (a) plaintiff's ownership of the land; (b) plaintiff's possession of the land; and: (c) averred ownership by adverse possession for ten years, if they had so elected; refusing to plead, they are estopped and barred from doing so in this case. Hamilton v. McLean, 169 Mo. 73, and authorities cited under point one. (4) In an action to quiet title, all matters affecting the title of the parties to the action may be litigated and determined, and the judgment therein is final and conclusive. A general finding of title in the plaintiff and consequently of no title in the defendant is a conclusive and binding decision against the defendant on the question of title from whatever source it may be derived, and forever estops him from asserting a claim of title which existed at the time of the finding and the judgment. This is the very purpose of the statute. 2 Black on Judgment, sec. 664,

p. 800; Sec. 650, R. S. 1899; Sec. 2535, R. S. 1909. (5) The petition in the suit to quiet title was in accord with the provisions of the statute, except the prayer. The circuit court of New Madrid County, however, disregarded so much of the prayer as was inappropriate and unauthorized under the averments of the petition and the law, and entered a decree quieting title in plaintiff. The court had the right to grant plaintiff any relief "consistent with the case made by the plaintiff and embraced within the issues." The character of an action is determined by the facts stated in the petition and not by the prayer for relief. Sec. 76, R. S. 1899; Sec. 2100, R. S. 1909; Sec. 767, R. S. 1899; Sec. 2091, R. S. 1909; State ex rel. v. Land & Lumber Co., 161 Mo. 671; Sharkey v. McDermott, 91 Mo. 657; Reed v. Bott, 100 Mo. 67; Commings v. Railroad, 48 Mo. 517; Lumber Co. v. Jones, 220 Mo. 197. (6) The judgment of the circuit court of New Madrid County of September, 1908, adjudging that the plaintiff was the owner in fee of the land in suit, and further adjudging and decreeing that the defendants and each of them be forever enjoined, restrained and forbidden from asserting any right, title, claim or interest in and to the land, is just as binding as any other judgment affecting real estate. The statute specially provides that such a judgment "shall have the same force and effect as a judgment obtained under the provisions of the Code of Civil Procedure." Sec. 651, R. S. 1899; Sec. 2536, R. S. 1909.

*I. R. Kelso* and *J. G. Miller* for respondents.

(1) A suit to quiet title does not contemplate a judgment for possession, and that a writ of ouster go. "The precise point has been ruled upon and is no longer open." Mann v. Doerr, 222 Mo. 11. (2) The Act of 1897, concerning suits to quiet titles, by declaring that it is enacted for the purpose of "taking the place of statutes which fail in their object," expressly repeals Sec. 2092, R. S. 1889 (Sec. 647, R. S. 1899), since there is no other section to which it can refer. Merriweather v. Love, 167 Mo. 514. (3) We call attention to some of

the cases decided by the courts of this State under Section 2092, above mentioned, and under which appellant attempted to institute suit to quiet title after this statute had been repealed. (a) In order to institute a proceeding under this section the petitioner must be in actual possession of the premises. Von Phul v. Penn, 31 Mo. 333; Rutherford v. Ullman, 42 Mo. 216; McGrath v. Mitchell, 65 Mo. App. 626; Root v. Mead, 58 Mo. App. 477; Chaffin v. Clark, 33 Mo. App. 99; Thompson v. Newberry, 93 Mo. 18. (b) A proceeding instituted under this section is not for the purpose of settling the title to the premises in the first instance, but is only preliminary to an action which the defendant or adverse claimant may be ordered to bring for that purpose. See cases above cited; also Colline Assn. v. Johnson, 120 Mo. 299. (c) On the trial of the issues formed on the petition, evidence showing title in fee in the plaintiff, is not proper; it being only necessary for him to show actual possession of the premises, claiming either an estate of freehold, or an unexpired term of not less than ten years. Dyer v. Baumeister, 87 Mo. 134. (d) A possession by the plaintiff that is merely nominal, or wrongfully obtained for the purpose of instituting a suit so as to require the defendant to bring a suit to assert his title, is not sufficient to justify an order against the defendant to institute a suit. See last case above cited. (e) This section was not intended to authorize a proceeding that would be a substitute for the action of ejectment.

WILLIAMS, J.—This is a suit in ejectment to recover the north fractional half of the southwest fractional quarter of fractional section 13, township 22, range 13 east, containing 141.1 acres, situated in New Madrid County, Missouri. The suit was transferred on change of venue from the New Madrid Circuit Court to the Butler Circuit Court, where trial was had before the court, without a jury, resulting in a judgment for the defendants. Plaintiff duly perfected an appeal.

The petition is in usual form.

The answer is in five counts, admits possession of the property in defendants, but denies each and every other allegation in the petition. The ten-year and thirty-year Statutes of Limitation are also pleaded as defenses.

The fifth count of the answer is in the nature of a cross-bill, and alleges that the defendants are the owners of and in possession of said land and that they are informed and believe that plaintiff claims some title or interest in said land, the nature and character of which is unknown to defendants, but that defendants are informed that plaintiff is basing his claim to said land on a decree entered in the circuit court of New Madrid County at the September Term, 1908, in a proceeding wherein Murray Phillips was plaintiff and these present defendants were defendants. It is alleged that said decree is void because the court entering the same had no jurisdiction over the property described in said decree, and that said decree was not responsive to the petition attached to the copy of the summons served on the defendants, but wholly failed to describe the property as set out in said decree; that defendants failed to file any answer or appear in any manner in said suit because they, in good faith, believed that said suit was not intended and did not in any manner affect any of the land described in this suit. In the prayer the court is asked to cancel and set aside said decree and to ascertain and determine the title to said land.

The reply denied the new matter set up in each count of the answer.

Plaintiff introduced evidence showing that the paper title to said land was in the plaintiff. The evidence further shows that said land was timbered land and none of it was prepared for cultivation and that a short time prior to the institution of this suit the record owner had some men on the land clearing it and that about six or eight acres had been cleared when defendants ordered said men off the place and took possession of the same. The disputed land is situated between the land owned

by plaintiff and land owned by the defendants. Plaintiff testified that he did not know that this woodland, around which the defendants had a fence, was a portion of his land until a surveyor (the date of the survey is not given) ran a line and it was discovered that the defendants' fence extended a quarter of a mile too far south; that it is wood land and unoccupied.

The evidence upon the part of the defendants tended to establish the following facts:

The plaintiff was recalled for further cross-examination and testified that the suit which he had formerly instituted in New Madrid County against the same defendants involved the same property as is now involved in this suit.

L. F. Steele, a surveyor of New Madrid County, testified that he had known the land for three or four years and that during that time Mr. Broughton had been in possession of it. On cross-examination he testified that when he made the survey he found a fence along the south side of the land in suit (the south side adjoined the undisputed land of plaintiff); that it was not much of a fence, and it looked like a part of the fence had been torn down; that the fence on the west side was apparently a good one, but that the witness did not go around the north or east side of the tract.

Henry E. Broughton, Collector of New Madrid County for the past fourteen years, testified that said land was used by the defendants as a pasture during the last ten or fifteen years; that in the year 1897 the witness and his brother (his brother, now deceased, being the person under whom defendants claim) were partners, engaged in buying and selling cattle, and at that time a fence was built around the land in question and they kept cattle in there. The fence which they built contained nine or ten wires, and that prior to the building of this fence there was a three or four-strand wire fence around this land, but the witness did not know how long it had been there or who built it. The witness testified that the land in dispute had been known as the Broughton land ever since the witness, who was fifty-four years

old, could remember. This witness testified that defendants paid taxes on about sixty-one acres of this disputed land.

Defendants introduced in evidence two deeds conveying to persons under whom they claimed about fifty-six acres of the land in dispute. It does not appear that the grantors in these deeds had any record title, and from the showing made their interest would amount to only color of title.

H. E. Broughton, Jr., one of the defendants, testified that the defendants or those under whom they claimed built a nine-wire fence around the disputed property twelve or fourteen years ago and that the land had been enclosed by a fence ever since and had been used by the witness's father as a pasture; and that there was a fence around the place before the nine-wire fence was built. Upon cross-examination this witness testified that his brother ran plaintiff's negroes out of this land when they were there clearing the same; that the defendants, and those under whom they claim, claimed to own all of this timber land enclosed by the fence and used the same as pasture "during all this time."

Defendant Nannie Broughton testified that the defendants claimed to own all the property inside of the fence and that they first learned that their right was questioned by plaintiff about two years ago when he began clearing it up; that when they found out that he was claiming the land they stopped him. This witness testified that she was served with a summons in the first suit instituted by the plaintiff in New Madrid County against these defendants; that when the summons and copy of the petition was served upon her she asked the sheriff what it meant and the sheriff told her that it meant that "Murray wants to borrow money and it seems the Hunter heirs are all mixed up in a law suit some way and he can't get it unless the Hunter heirs all sign this paper;" and that she thought the sheriff knew what he was talking about and, for that reason, she didn't go to court and make a defense in the suit. The witness testified that her husband died February 10,

1904, and she kept a diary of everything that occurred; that in 1891 there were three strands of barb wire put around the woods pasture to keep the mares and colts in there, and that in 1897 the nine-strand wire fence was put around the land so they could pasture cattle in there.

Defendants introduced in evidence the summons and the petition in the first suit between these parties, which resulted in the decree in favor of the plaintiff entered by the New Madrid Court at its September Term, 1908. Said petition, omitting formal parts, was as follows:

"Plaintiff says that the defendant Nannie Broughton is the widow of Arthur Broughton, deceased, and that the other defendants except Alpheus Moore, the husband of said Ethel Broughton, are the children of said Arthur Broughton, deceased.

"Plaintiff says that he is the owner in fee and in possession of the following described land situated in New Madrid County, Missouri, to wit:

"The southwest fractional quarter of section thirteen (13), township twenty-two (22) north of range thirteen (13) east.

"Plaintiff says he is credibly informed and believes that defendants make some claim to the estate of plaintiff in said above-mentioned lands, and therefore prays that defendants may be summoned to show cause why they should not bring an action to try their alleged claim or title thereto, if any they have."

Defendants also offered in evidence the decree in said cause, which, omitting caption, is as follows:

"On this day comes the plaintiff by his attorney and Lelia M. Broughton, a minor, by her guardian *ad litem*, T. J. Brown, and it appearing to the court that the defendants, Mrs. Nannie Broughton, Edward S. Broughton, Henry E. Broughton, Jr., Jennie Broughton, Ethel Moore and Alpheus Moore, her husband, and Hunter Broughton, have been duly and personally served with process herein, they are called and come not but make default.

"Wherefore, on motion of the plaintiff by his attorney, this cause is taken up and submitted to the court upon the pleadings and the evidence adduced by the plaintiff, and the court being fully advised in the premises doth find: that the allegations in plaintiff's petition are true; that the plaintiff is the owner in fee of the southwest fractional quarter of section 13, township 22 north of range 13 east in New Madrid County, Missouri.

"Wherefore it is ordered, adjudged and decreed by the court that the defendants, and each of them, be forever enjoined, restrained, forbidden and prohibited from asserting any right, title, claim or interest in or to the southwest fractional quarter of sec-

tion 13, township 22 north of range 13 east in New Madrid County,
Missouri, which would in any way abridge, modify, restrict or in-
terfere with the free, full and complete fee ownership thereof by
the plaintiff Murray Phillips, and that the costs of this proceeding
be taxed against the plaintiff."

In rebuttal plaintiff introduced in evidence tax re-
ceipts showing that plaintiff had paid the taxes on this
land and other land for the years 1901, 1902, 1903, 1905
and 1907. Plaintiff offered other witnesses who testified
that for the last twelve or fourteen years the land in
question had been open most of the time, so that stock
could go in and out whenever it pleased and that other
persons' stock would go in there; that it was the same
as an open woods; that sometimes Frank Phillips would
fix the fence and it would be up for a few days and then
be down again; that some of the fence had nine wires
and some three wires, and that there had never been
anybody living on the place or in possession of it. One
witness testified that he asked defendants if he could
turn some stock on the land in question and that they
said he could. Another witness testified that the fence
around the land in question was down in several places
and that: "You might say that there was no fence par-
ticularly around it. It has been in that condition since
the year 1904. My stock run backward and forward into
it; go in there every morning and come out at night.
It is just the same as an open woods. Anybody's stock
in that neighborhood can go in there the same as any
other old deadening." On cross-examination this wit-
ness testified that the land had been used as Broughton's
pasture ever since the witness knew it in 1904.

I. The result to be reached in this opinion will de-
pend upon the validity or invalidity of the default judg-
ment of the circuit court of New Madrid County, Mis-
souri, entered at its September term, 1908. If that judg-
ment is a valid one the defendants in this ac-
Former tion would be precluded from introducing evi-
Judgment, dence as to the title of this land at a period
as Bar. prior to the rendition thereof, and upon the
record here presented the present judgment in favor of

defendants would be erroneous, because not supported by sufficient evidence. If, on the other hand, the judgment is null and void, then, we think, there are sufficient facts disclosed in the foregoing statement of facts to warrant the trial court in entering the judgment it did in favor of defendants, on the theory that defendants hold the title through adverse possession.

II. Is the judgment of 1908 null and void? Upon careful consideration, we have reached the conclusion that it is.

Said judgment and the petition upon which it is based will be found copied in full in the foregoing statement. It will be noted that the *only* relief prayed in void said petition was as follows: "Plaintiff Judgment. . . . therefore prays that defendants may be summoned to show cause why they should not bring an action to try their alleged claim or title thereto if any they have." Summons was issued and, together with a copy of said petition, was duly served upon the defendants. The defendants did not appear (with the exception of one minor defendant who appeared by guardian *ad litem* and filed answer), and a judgment by default was entered against them, whereby they were "forever enjoined, restrained, forbidden and prohibited from asserting any right, title, claim or interest therein."

A mere reading of said petition shows clearly that it was instituted under the provisions of section 2092, Revised Statutes 1889, which was carried forward (erroneously however) into Revised Statutes of 1899 as section 647, and the only relief there prayed was the relief contemplated by said section. The decree grants also only such relief as was by said section provided.

Section 2092, Revised Statutes 1889, had, however, by the Act of 1897 (see Laws 1897, page 74) been repealed long before the suit was instituted. [Meriwether v. Love, 167 Mo. 514.]

That being true the court was without authority to grant the relief as prayed or as contemplated by said repealed statute and the judgment in so far as it under-

took to grant the relief afforded by that statute, and as prayed, was, therefore, null and void.

It is, however, contended by appellant that the relief granted was authorized by section 650, Revised Statutes 1899, the same being the Act of 1897, supra. We think it clearly appears from a reading of the decree, however, that the court did not attempt to grant the relief provided by section 650, supra, this because the title to the land was not specifically determined and adjudged as is contemplated by said section, but the decree merely went to the extent of *enjoining* the defendants from asserting title thereto as was contemplated and provided *only* by section 2092, Revised Statutes 1889, which, as we have above seen, was not then in force.

Furthermore even though it should be conceded that the decree granted *other* relief from that which was prayed, the *other relief* decreed would not be binding upon the defendants *defaulting,* this because of the express provisions of a statute, to-wit, section 2100, Revised Statutes 1909, which provides that upon default, such as occurred in that case, the relief granted "shall not be *other* or greater than that which he [plaintiff] shall have demanded in the petition, as originally filed and served on defendant." [See also Janney v. Spedden, 38 Mo. 395, l. c. 402; Leavenworth Terminal Ry. & B. Co. v. Atchison, 137 Mo. 218, l. c. 230; Russell v. Shurtleff, 28 Colo. 414.]

The cases cited and relied upon by appellant in support of the contrary contention are not *default* cases and are therefore not in point here.

The judgment is affirmed. All concur.